Isabel OTERO, Plaintiff–Appellant,

v.

BRIDGEPORT HOUSING AUTHORI-TY, Clarence Craig, Joseph Papa, Jose Colon, Roy Boyd, Anita Wells, Earl Mellow, Defendants–Appellees.

Docket No. 01–7635.

United States Court of Appeals, Second Circuit.

Argued: Feb. 28, 2002.

Decided: July 19, 2002.

John T. Bochanis, Bridgeport, Connecticut (Thomas J. Weihing, Daly, Weihing & Bochanis, Bridgeport, CT, on the brief), for Plaintiff–Appellant.

John B. Farley, Hartford, Connecticut (Thomas P. O'Dea, Jr., Ralph W. Johnson, III, Erik J. Ness, Halloran & Sage, Hartford, CT, on the brief), for Defendants–Appellees.

Before: KEARSE, JACOBS, and KEITH *, Circuit Judges.

KEARSE, Circuit Judge.

Plaintiff Isabel Otero appeals principally from so much of a judgment of the United States District Court for the District of Connecticut, Peter C. Dorsey, *Judge,* as dismissed, following a jury verdict in her favor in the amount of $145,900, her claims under 42 U.S.C. § 1983 against her former employer defendant Bridgeport Housing Authority ("BHA") and defendant Clarence Craig, Jr., its executive director, for termination of her employment in violation of her right to due process. The district court, pursuant to Fed.R.Civ.P. 50(b), set aside the jury's verdict and granted judgment in favor of BHA and Craig as a matter of law on the ground that Otero had received an adequate hearing prior to the termination of her employment or, alternatively, that she had resigned her position and thereby vitiated her claim for wrongful termination. On appeal, Otero seeks reinstatement of the jury's verdict, arguing that the district court erred by making assessments of credibility and by failing to construe the evidence in the light most favorable to her.

The district court also, at the close of Otero's case at trial and prior to submitting the case to the jury, granted judgment as a matter of law in favor of the other defendants, finding that there was no evidence that those individuals had any responsibility for or involvement in either deciding whether Otero would be discharged or determining what kind of hearing she would be given. Although Otero's notice of appeal indicated that she challenged that ruling as well, her brief on appeal contains no argument as to why that ruling was incorrect, and we thus regard that challenge as waived, *see generally Day v. Morgenthau,* 909 F.2d 75, 76 (2d Cir.1990); *Kletschka v. Driver,* 411 F.2d 436, 446–47 (2d Cir.1969); Fed. R.App. P. 28(a)(9).

Otero also challenges the court's pretrial dismissals of certain of her state-law claims. For the reasons that follow, we find merit only in Otero's challenge to the granting of judgment as a matter of law in favor of BHA and Craig on Otero's due process claims, and we remand for further proceedings with respect to the due process claim against those two defendants, as discussed below.

## I. BACKGROUND

Otero was employed by BHA from March 1981 until September 1996. During the latter part of that period she was assigned to BHA's Charles F. Greene Homes public housing project ("Greene Homes") in Bridgeport, Connecticut, as a maintenance foreperson. In that capacity Otero supervised several employees, including defendant José Colon, who was a janitor, and defendant Roy Boyd, whose title was Maintenance Leadman. Otero's supervisor was defendant Anita Wells, a senior site manager.

In September 1996, Otero was discharged for allegedly stealing a toilet. Except where indicated, the following is based on Otero's testimony at trial or reflects the evidence taken in the light most

---

* Honorable Damon J. Keith, of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

favorable to her as the party against whom judgment was granted as a matter of law.

## A. *The Toilet*

According to Otero, Boyd approached her on July 23, 1996 and said he had a maintenance emergency requiring a new toilet to replace an inoperable one in a Greene Homes apartment. Boyd told her there were no toilets in their on-site stockroom and that they would need to obtain one from BHA's central warehouse. At that time, the BHA delivery truck assigned to Greene Homes was being repaired. Colon, who was present during Otero's conversation with Boyd, offered to drive Otero in his truck to get the toilet from the warehouse.

Otero went to the warehouse with Colon, obtained the toilet components, and filled out a requisition form for those components (*i.e.*, bowl, tank, and seat). Otero and Colon loaded the boxed components (collectively the "toilet") into Colon's truck and took them back to Greene Homes. As they were arriving, Otero received a radio call from Wells, asking her to go to the Greene Homes maintenance office to address another urgent maintenance problem. Otero therefore had Colon drop her off at that office; she directed him to place the toilet in the maintenance shop until time for its installation.

The next day, Otero asked Boyd and Colon about the toilet, and Boyd said the problem had been taken care of. It is unclear, however, precisely what happened to that toilet.

## B. *The Investigation*

In August 1996, while Otero was on vacation, Wells apparently happened upon the toilet requisition in Otero's desk and wondered about the need for such a requisition from the warehouse because BHA had toilet tanks and bowls in its on-site stockroom. Wells reviewed the work orders for the pertinent time period and found that one toilet seat had been replaced. She did not find a work order indicating that a toilet bowl or tank had been replaced.

As a result of Wells's suspicions, defendant Earl W. Mellow, BHA's chief of security, began an investigation into the missing toilet on September 4, 1996. In the next few days, Mellow interviewed, and obtained notarized statements in deposition form from, *inter alios*, Wells, Colon, and Boyd.

Wells, in her sworn statement, described her discovery of the requisition and her ensuing inquiries, including her questioning of Colon. Wells stated that Colon told her he had picked up the toilet with Otero and had installed it in a vacant Greene Homes unit.

Boyd, in his notarized statement, told Mellow he had known nothing about the missing toilet until after Wells began making inquiries about it. Boyd said he then asked Colon whether he knew anything about the toilet, and Colon said he had picked up the toilet and taken it to Otero's house on Hallett Street. According to Boyd, Colon became apprehensive when Boyd told him Wells was making inquiries; Colon then called Otero and advised her to "get the stuff back," and Otero told Colon to get the toilet and take it to Greene Homes Building One. (Sworn Statement of Roy Boyd dated September 5, 1996 at 1.) Boyd stated that he and Colon proceeded to do as Otero asked, bringing the toilet from Hallett Street to Building One.

Colon, in his sworn statement, told Mellow that on July 23, 1996, he had gone with Otero to the warehouse and had picked up the toilet. Colon stated that they had taken the toilet to a garage where Otero's car was being repaired and that he had placed

the toilet in the trunk of Otero's car. Colon also stated that when he learned that Wells was making inquiries about the toilet, he alerted Otero; Colon stated that Otero apparently already knew about Wells's inquiries because Boyd had called her. Colon said he and Boyd then went to retrieve the toilet from a house owned by Otero on Kossuth Street but could not bring it back because it was already installed.

Mellow did not interview Otero.

Following his investigations, Mellow sent a report dated September 9, 1996, to defendant Joseph R. Papa, BHA's Deputy Director of Management and Administration, with a copy to Craig, summarizing the above statements. The report concluded that

the items were transferred to a private vehicle and taken to a private home where they were installed.... In my opinion there is sufficient probable cause to believe that a larceny has been committed and that this theft could be referred to the Bridgeport Police Department, where an arrest warrant could be sought against Ms. Isabel Otero charging her with larceny in the sixth degree in violation of ... the Connecticut General Statutes.

(Memorandum of Earl W. Mellow ("Mellow Memorandum") dated September 9, 1996 at 3.)

C. *The Accusation of Otero and the Termination of Her Employment*

 1. *The September 11 Meeting: Accusation*

At about 4 p.m. on September 11, 1996, Otero was summoned to a meeting with Craig. Otero was accompanied by her union representative, Joseph Carrafiello; and Mellow was present. There was substantial dispute at trial as to whether any other persons attended part of that meeting and as to what Otero was told.

Otero testified that Craig stated that it had been brought to his attention that Otero "had used BHA property for [her] own personal use" and that he had "substantial evidence to back that up." (Trial Transcript dated December 13, 2000 ("Dec. 13 Tr."), at 85–86.) Otero told Craig that she and Colon had indeed picked up the toilet from the warehouse, but she denied stealing it. When she told Craig she had not taken the toilet, he said "he just didn't want to hear it." (Trial Transcript dated December 14, 2000 ("Dec. 14 Tr."), at 84.) Otero tried to point out that just because she picked the toilet up from the warehouse did not mean she had stolen it. But Craig "kept on saying, ... '[t]he meeting is over, the meeting is over.'" (Dec. 14 Tr. at 85.)

Craig gave Otero until 10 a.m. on September 13 to prove that she did not steal the toilet or to resign. Craig said that in the absence of such proof or a resignation, Otero would be discharged.

Otero testified that other than saying that he had "substantial evidence," *in haec verba,* Craig told her nothing of substance. She was not given copies of the written statements that Mellow had collected from Wells, Boyd, and Colon. She was not given a copy of Mellow's report. No one read to her any part of any of those documents. She was not given any documents at that meeting. She was not told that she would be presented with either the documents or the persons who had signed them at a later date. And no one other than Craig, Mellow, Otero, and Carrafiello attended the meeting.

In contrast, Mellow, called initially as a trial witness by Otero, testified that at the September 11 meeting, although he did not give Otero copies of the statements he had collected from the BHA employees, he

read portions of those statements to her. In addition, Mellow testified that he called Colon and Boyd into the meeting to corroborate their written statements. Craig, called as a witness by the defense, similarly testified that Colon and Boyd had been called into the meeting and had described their recollections of what had happened to the toilet. Colon testified at trial that he had been called into the meeting; he said that he read his entire statement to Otero. Craig could not say that anyone had given a verbatim reading.

Otero left the September 11 meeting and tried to collect information in advance of the meeting scheduled for 10 a.m. on September 13. She looked for a copy of the requisition for the toilet and a copy of the work order requesting the toilet, but she was unable to find either document. She and Wells went to an apartment where they thought the purloined toilet might be, but they found only a different model. Otero testified that she tried to get information from Colon and Boyd, but that neither would answer her questions. She asked Colon what had happened to the toilet; he refused to respond, except to say that he had installed it but couldn't remember where. She spoke to Boyd-who she testified had originally asked her to requisition the toilet—and asked him for "the number of the unit where he was supposed to have installed the toilet" (Dec 13 Tr. at 107); Boyd said he knew nothing and walked away.

2. *The September 13 Meeting: Termination*

Otero returned to Craig's office on the morning of September 13 as instructed. Craig was absent; in his stead was Papa, BHA's deputy director. Mellow attended the meeting. Otero was accompanied by Carrafiello and another union representative, Donna Johnson.

Papa began by saying that this meeting was a continuation of the September 11 meeting and that he was there in place of Craig "to get [Otero's] response as to whether [she] was going to resign" or whether she would be terminated. (Dec. 13 Tr. at 105.) Otero stated that she would not resign because that would be tantamount to admitting that she had stolen the toilet, and she maintained that she had not. Papa then discharged Otero, giving her a "pink slip" which described the "Reason for Unemployment," as "Discharged for felonious conduct or larceny."

Otero testified that at the September 13 meeting, as at the first meeting, she was not given copies of any of the sworn statements underlying BHA's accusation. No one even informed her that Mellow had conducted an investigation.

3. *The September 26 Grievance Meeting: Resignation*

Following Otero's September 13 discharge, her union filed a grievance on her behalf, asserting that her employment had been terminated without just cause. A meeting was held on September 26 to discuss the grievance. At that meeting, attended by Craig, Mellow, Otero, and her two union representatives, Craig stated that he would, in consideration of Otero's years of service, allow her to reconsider and resign in lieu of being discharged. He stated that by resigning she could preserve her BHA pension. Craig gave Otero five minutes to decide.

Otero had two daughters, was responsible for several recurring mortgage, rental, or installment payments, and, as of September 13, had no job. Carrafiello and Johnson advised her to resign in order to preserve her pension and improve her ability to find another job. Otero decided to resign. She did not admit stealing the toilet.

Otero testified that at the September 26 meeting, as at the meetings held on September 11 and 13, she was not given copies of any of the employee statements collected by Mellow; she was not given a copy of Mellow's report to BHA; and no one informed her of the nature of the "substantial evidence" that underlay the accusation. Otero was never given any of those documents—or even told that they existed—until she filed the present action.

## D. The Jury's Verdict

The present action was commenced by Otero in September 1998 in state court and was removed to the district court. The complaint alleged principally that Otero's employment had been terminated without due process. Otero also asserted, *inter alia*, state-law claims for negligent and/or reckless investigation of the accusations leading to her discharge (the "reckless-investigation claim") and for defamation. The reckless-investigation claim and several others were dismissed in September 1999 for failure to state a claim on which relief can be granted; the court granted summary judgment in favor of defendants on the defamation claim in June 2000, leaving only the due process claim for trial.

The evidence at trial included the testimony of Otero described in Parts I.A., B., and C., above. At the close of Otero's direct case, all of the defendants moved pursuant to Fed.R.Civ.P. 50(a) for judgment as a matter of law ("JMOL"), arguing principally that Otero had not proven that she was not given adequate notice of the charge against her. The district court dismissed the claims against Colon, Boyd, Wells, and Mellow on the ground that those individuals were not decisionmakers either as to whether Otero would be discharged or as to what sort of hearing she would receive. The court concluded that

the due process claims against BHA, Craig, and Papa, however, should be submitted to the jury, stating that "while I think [defendants have] an argument, there may be some evidence that would justify a finding that she was not provided with an adequate opportunity." (Trial Transcript dated December 15, 2000 ("Dec. 15 Tr."), at 10.)

The defense case included testimony by Mellow and Craig as to their versions of what had occurred at the September 11 meeting. Defendants also called as a witness Carrafiello, the union representative who had attended all three of Otero's meetings with Craig or Papa. Carrafiello's memory of the precise sequence of events was hardly clear, and his descriptions of the earlier meetings provided little, if any, detail; but his recollection appears to have been that at the September 26 meeting he and Johnson were given a "booklet" or "bible" that may have included the statements that Mellow had collected from Colon, Boyd, and Wells. (*See* Trial Transcript dated December 18, 2000 ("Dec. 18 Tr."), at 157 ("That last meeting that we had ... me and Donna talked to [Otero] alone after we had all the things, showed her the copy, what-what Earl Morrow [*sic*] had."); *id.* at 167 ("I got a whole booklet ... of the statement [*sic*].... And they could be in there. I can't recall now."); *id.* (Carrafiello received a sheaf of material "[w]ith all of the statements, everything was in there."); *id.* at 163 ("it could have been all these people in there that I can't recall now.").) Carrafiello testified that he and Otero were not given copies of the employee statements at the September 11 meeting and were not given the booklet at that meeting, "but we had their statements that they were testifying like you're telling me now." (*Id.* at 161–63; *id.* at 161 ("All this was said at the time.").)

Craig was cross-examined about his investigation into the matter of the missing toilet, and he admitted that before he summoned Otero to his office to answer the charge that she had stolen the toilet, he had not actually read any of the statements by Colon, Boyd, or Wells. He had merely talked with Mellow. Craig acknowledged at trial that the sworn statements collected by Mellow contained a number of inconsistencies and that Colon, in particular, had given several different versions of what he had done with the toilet. Craig testified that he had made no attempt to reconcile the conflicting accounts before accusing Otero.

The jury, during its deliberations, asked for rereadings of the testimony of several of the defense witnesses, including Craig, Papa, Mellow, and Carrafiello. The jury eventually concluded that Otero had not proven her claim against Papa. However, it found that Otero had proven that she was denied due process by BHA and Craig, and it returned a verdict in her favor against those two defendants in the amount of $145,900.

### E. *The Posttrial Motions*

Following the jury verdict, BHA and Craig renewed their JMOL motions pursuant to Fed.R.Civ.P. 50(b). They also moved, in the alternative, for a new trial or a modification of the judgment to reduce the amount of the damages award. Otero moved for awards of front pay, prejudgment interest, attorneys' fees, and costs.

The district court granted JMOL in favor of BHA and Craig, finding that Otero, contrary to her testimony, had been informed of the evidence against her at the September 11 meeting:

> Plaintiff's story was substantially contradicted. Per Mr. Mellow after he completed his investigation of the matter, plaintiff was called into Mr. Craig's office where the statements given by Messrs. Boyd and Colon and Ms. Wells[ ] . . . were read to her. Mellow's report . . . and the statements were provided to the union representatives who, according to Mr. Carrafiello, discussed their contents with plaintiff. In the presence of plaintiff, Ms. Johnson, and Mr. Carrafiello, Boyd and Colon repeated their statements . . . .

> . . . .

> Mr. Craig, Mr. Mellow, and Mr. Carrafiello all confirmed the disclosure at the September 11 meeting of the evidence of plaintiff's taking of the toilet.

Order Re: Pending Motions, dated April 23, 2001 ("JMOL Ruling") at 4–5. The court stated that

> [p]laintiff's claim requires proof that she was not provided with notice of the charge being considered against her, some semblance of the evidence against her, and an opportunity to respond to the charge. The motion does not afford the court the option of deciding the case contrary to the decision of the jury. Rather, it requires a search of the record for evidence supportive of the verdict in the face of defendants' claim that plaintiff's own evidence demonstrates the lack of any evidential foundation for the jury's verdict. On direct examination, plaintiff restated her claim in the complaint that she was not so notified, that she was not informed of the evidence, and that she had no opportunity to respond. The court may not disregard plaintiff's evidence on the basis of her credibility even where there is an ample basis for doing so. Thus, the question presented must be decided on the evidence, including that from plaintiff, which defendants cite as proof she was afforded full compliance with her right of due process. Simply put, when proof of the claim is based on the plaintiff's

having said "no," is a jury question presented when she has also said "yes," particularly when the only evidence supportive of her claim is her testimony? May the court decide the question based on the fact that all the evidence, other than plaintiff's testimony, contradicts her "no" and supports her "yes"?

.... Plaintiff testified that Craig informed her at the September 11 meeting that there was substantial evidence that she had misappropriated BHA property for her personal use.... The testimony of others at the meeting, i.e., Craig, Mellow, Carrafiello, was that plaintiff was informed of the evidence that she had misappropriated a toilet.

Plaintiff testified that after the September 11 meeting she sought to talk to Messrs. Boyd, who told her he knew nothing about a toilet, and Colon, and, with Ms. Wells[ ], plaintiff searched for the toilet. She also searched for the requisition and the work order. Thus, from her own testimony ... plaintiff knew that she was charged with misappropriation of a toilet and knew the source of the evidence against her, i.e., Messrs. Colon, Boyd and Ms. Wells[ ], and that the requisition and work order were significant in relation to the charge of misappropriating the toilet. In confirmation of the testimony of Boyd, Colon, Craig, Mellow, and Carrafiello that Boyd and Colon reiterated their statements in plaintiff's presence at the September 11 meeting, and in contradiction of plaintiff's testimony that she was provided with no information as to the evidence against her, plaintiff testified that Boyd and Colon were called to Craig's office on September 11.

JMOL Ruling at 10–11.

With respect to Otero's claim that she was not given an adequate opportunity to respond, the court stated that

[Otero] testified about her efforts between the first two meetings to obtain evidence with which to defend herself. The nature of her inquiry/search suggests a full awareness of the evidence against her as she knew what to look for in response and what she went looking for would have been responsive to the evidence on which the BHA was relying. Plaintiff had to know what was said against her and who said it to make the inquiry she testified she made.

Id. at 12.

In addition, the court stated that even if the JMOL motion could not be granted on the ground that Otero was not denied due process, it could be granted on the alternative ground that "the adverse employment decision of which she complains, and on which her claim of a due process violation is based, was vitiated" because she "was not terminated by BHA," but rather she resigned. Id. at 13.

Because it granted the JMOL motion, the court found it "unnecessary to decide the Motion for Modification or a New Trial ... which is therefor[e] denied without prejudice." Id. at 14. The granting of JMOL also mooted Otero's posttrial motions for front pay, interest, attorneys' fees, and costs. This appeal followed.

## II. DISCUSSION

On appeal, Otero principally seeks reinstatement of the jury verdict, contending that the granting of JMOL in favor of BHA and Craig was based, impermissibly, on the court's own assessments of credibility and on its failure to draw permissible inferences in Otero's favor. She also contends that the court erred in dismissing her state-law claims for defamation and for reckless investigation of the theft charge. We find merit only in her principal contention.

## A. JMOL in Favor of BHA and Craig on the Due Process Claim

 The district court may properly grant judgment as a matter of law in a case tried to a jury if "a party has been fully heard on [a dispositive] issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a)(1). In reviewing the record to determine whether a motion for JMOL should be granted, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.... 'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). JMOL is thus "proper only if 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached.'" *Fiacco v. City of Rensselaer*, 783 F.2d 319, 329 (2d Cir.1986) (quoting *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir.1970)), *cert. denied*, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987). And in making that determination, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. at 151, 120 S.Ct. 2097.

 A public employee who has a right not to be fired without "just cause"—and there is no dispute that Otero is such an employee—has "a property interest in h[er] employment that qualifie[s] for the protections of procedural due process." *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991); *see also Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538–41, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (*"Loudermill"*). The pretermination process "need not be elaborate" or approach the level of a "full adversarial evidentiary hearing," *id.* at 545, 105 S.Ct. 1487, but due process does require that before being terminated such an "employee [be given] oral or written notice of the charges against h[er], *an explanation of the employer's evidence*, and an opportunity to present h[er] side of the story," *id.* at 546, 105 S.Ct. 1487 (emphasis added); *see also Munafo v. Metropolitan Transportation Authority*, 285 F.3d 201, 212 (2d Cir.2002).

 The district court in the present case did not properly apply these principles in granting JMOL against Otero after the trial of her due process claim. First, rather than noting that Otero was entitled to "an explanation of [BHA's] evidence," *Loudermill*, 470 U.S. at 546, 105 S.Ct. 1487, the district court stated only that she must be provided with "some semblance of the evidence," JMOL Ruling at 10. Merely presenting "some semblance" of the evidence, however, does not necessarily afford the accused an adequate opportunity to present her side of the story. In this case, for example, a significant part of the evidence on which Mellow relied for his conclusion that the toilet had been "taken to a private home where [it was] installed" (Mellow Memorandum at 3) was Colon's statement to him that the toilet was installed at Otero's home on Kossuth Street. Had Otero been shown that statement, she might have been able to refute it simply by showing that the toilet in fact was not installed at her house on Kossuth Street.

Further, according to the statements Mellow obtained from Wells, Boyd, and Colon, Colon himself gave three inconsistent accounts of his own July 23 handling

of the toilet. He told Wells he had installed it in a Greene Homes apartment; he told Boyd he had taken it to Otero's house on Hallett Street; and he told Mellow he had deposited it in Otero's car at a repair shop. The fact that Colon had told three contradictory stories in the statements collected by Mellow could easily have provided a plausible alternative for the proposition that the toilet had been stolen by Otero. Had Otero been shown this evidence, she could have pointed out to Craig the rather obvious inconsistencies in the statements underlying his accusation—statements that he had not read before accusing her.

■ In addition, the district court appears to have equated "explanation of the employer's evidence" simply with "notice of the charge[ ]," for the court repeatedly returned to its observation that Otero knew she was being charged with theft of a toilet. For example, the court inferred that because Otero testified that after the September 11 meeting she talked to Wells, Boyd, and Colon in search of the toilet, "from her own testimony ... plaintiff knew that she was charged with misappropriation of a toilet and knew the source of the evidence against her." JMOL Ruling at 11. Mere notice of the charge, however, is not an explanation of the evidence and does not necessarily suffice to provide due process. Cf. United States v. Seltzer, 227 F.3d 36, 43 (2d Cir.2000) (noting that an attorney is entitled to due process before sanctions are imposed, and remanding where, inter alia, "district court based its decision to sanction [the attorney], in part, on unidentified information communicated by the clerk to the judge about his conversation with [the attorney. As the attorney] was not told what the clerk had said, she had no opportunity to dispute, rebut, or explain it.... We therefore must remand for further development of the record to provide [the attorney] with proper notice and an opportunity to be heard.").

Moreover, in inferring that Otero knew the source and substance of the BHA's evidence to support the theft charge simply because she sought out Colon and Boyd, the court failed to draw available inferences in Otero's favor, ignoring her testimony as to her only involvement with the toilet. According to Otero, Boyd was the person who had asked her to requisition the toilet, saying he needed it for an emergency; Colon was present at that conversation; after Otero and Colon picked up the toilet, Otero, summoned by Wells to solve another problem, left the toilet in the sole custody of Colon; and the next day, Boyd indicated to Otero that the toilet had been used to resolve his emergency. The jury was entitled to credit Otero's testimony. And given her version of the July 23 events, it is difficult to imagine where Otero would have begun her inquiries if not with Boyd and Colon.

We note also the following passage in the district court's JMOL Ruling:

> when proof of the claim is based on the plaintiff's having said "no," is a jury question presented when she has also said "yes," particularly when the only evidence supportive of her claim is her testimony? May the court decide the question based on the fact that all the evidence, other than plaintiff's testimony, contradicts her "no" and supports her "yes"?

JMOL Ruling at 10. This framing of the question too may indicate that the court equated notice of the charge with disclosure of the evidence, for we see no relevant testimonial "yes" by Otero other than her acknowledgment that she had been informed that the charge was that she had stolen a toilet. Otero unvaryingly testified that she had not, prior to commencing the present action, been shown or informed of the statements relied on to support that charge. To the extent that the issue was whether she was given an explanation of

the evidence, Otero never testified to a "yes."

Although the district court's opinion suggests the contrary when it states (a) that "plaintiff testified that Boyd and Colon were called to Craig's office on September 11," and (b) that that testimony both "confirm[ed] the testimony of Boyd, Colon, Craig, Mellow, and Carrafiello that Boyd and Colon reiterated their statements *in plaintiff's presence at the September 11 meeting*," and "contradict[ed]" Otero's "testimony that she was provided with no information as to the evidence against her," JMOL Ruling at 11 (emphasis added), the court's description of Otero's testimony in this regard is materially incomplete. Otero's testimony was that on September 11, she, Colon, and Boyd were working in an apartment. While they were there, Boyd was summoned by Wells-apparently to go to Craig's office. While Otero was still in the apartment, Boyd returned. Upon returning, Boyd told Colon to go to the office; Colon went, and he too returned while Otero was still in the apartment. Only sometime after Boyd and Colon had gone to Craig's office, and had returned, was Otero summoned to Craig's office. (*See* Dec. 13 Tr. at 385–87.) So far as we have been able to determine from the record, Otero never testified that Boyd or Colon attended any part of the September 11 meeting in Craig's office while Otero was there. To the contrary, she repeatedly testified that no one attended her meeting with Craig except Mellow and Carrafiello. (*See, e.g.,* Dec. 13 Tr. at 84, 85, 122; Dec. 14 Tr. at 14, 79, 80; Dec. 18 Tr. at 2, 3.) The testimony indicating that Colon and Boyd had met with Craig in Otero's absence provided no support for the court's inference that they were called into that office in her presence or that on September 11 she was shown their statements.

Nor could the district court properly rely on "*[t]he testimony of others at the meeting, i.e., Craig, Mellow, Carrafiello, . . . that plaintiff was informed of the evidence* that she had misappropriated a toilet." JMOL Ruling at 11 (emphasis added); *see also id.* at 4, 5 ("[p]laintiff's story was substantially contradicted" by "Mr. Craig, Mr. Mellow, and Mr. Carrafiello"). There is no question that the testimony of the two sides conflicted. But the assessment of the credibility of the respective witnesses was solely within the province of the jury. The jury was not, of course, required to believe Otero. But neither was it required to believe the witnesses whom the district court chose to credit instead. Craig and Mellow were not merely witnesses; they were defendants in the lawsuit, and the jury plainly was not required to believe their self-serving testimony. Nor was the jury required to believe the vague and conclusory testimony of Carrafiello—even assuming that it interpreted that testimony to mean that Otero had heard or been shown BHA's evidence prior to being fired. Given that the jury was not required to believe the testimony of Craig, Mellow, and Carrafiello that Colon and Boyd had been present at the September 11 meeting with Otero and that the evidence gathered by Mellow had been disclosed to her at that meeting, the court was required to disregard their testimony in ruling on defendants' motion for JMOL.

Nor could the court properly grant JMOL against Otero on the basis that her due process claim "was vitiated" because she "was not terminated by BHA" but rather resigned. JMOL Ruling at 13. BHA did not suggest that it had obtained any release from Otero, and there appears to be no doubt that Otero's "resignation" occurred on September 26, by which time "she had," in the words of Craig himself, "already been terminated" (Dec. 18 Tr. at 92).

In sum, crediting Otero's testimony, as the jury appears to have done, the jury

could have found that Otero, summoned and accused at 4 p.m. on September 11, and instructed to report back with proof that she had not stolen the toilet at 10 a.m. on September 13, was given little more than a day to prove a negative, and to do so without being informed of BHA's evidence of the affirmative. We see no basis on which the court could properly grant BHA and Craig judgment dismissing Otero's due process claim as a matter of law. Accordingly, we reverse the grant of JMOL in favor of those two defendants.

### B. *Otero's Other Claims*

Otero also contends that the district court erred in dismissing prior to trial her state-law claims for defamation and for reckless investigation of the theft charge against her. We affirm the summary dismissal of the defamation claim substantially for the reasons stated by the district court in its Ruling on Motions for Summary Judgment, dated June 26, 2000, at 5–6 (Colon and Boyd protected by qualified privilege for statements made, without any showing of bad faith or malice, in response to employer's investigation into a theft by a fellow employee); *id.* at 4–5 (report prepared by Mellow not actionable because it merely stated an opinion).

■ Nor are we persuaded that the court erred in dismissing Otero's claim that she was wrongfully discharged because defendants' investigation was reckless. Otero has pointed to no decision of the Connecticut courts recognizing such a cause of action on behalf of an employee such as herself, who was entitled not to be discharged except for "cause." *See, e.g., D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,* 202 Conn. 206, 212 & n. 1, 520 A.2d 217, 220 & n. 1 (1987) ("[T]he right to recover in tort for wrongful discharge extends only to employees at will.").

### C. *On Remand*

Because it granted BHA and Craig judgment as a matter of law, the district court found it unnecessary to address their alternative motions for a new trial or for a modification of the judgment to reduce the jury's award of damages, and Otero's motion for front pay, interest, attorneys' fees, and costs. Those motions remain to be decided on remand.

### CONCLUSION

We have considered all of the parties' arguments in support of their respective positions on this appeal and, except as indicated above, have found them to be without merit. The judgment is reversed to the extent that it granted judgment as a matter of law dismissing Otero's due process claims against BHA and Craig; in all other respects, the judgment is affirmed. The matter is remanded for such further proceedings as may be necessary, consistent with the foregoing.