UNITED STATES of America,
Appellant,

v.

Lawrence PETERSON, Defendant–
Appellee.

Docket No. 03–1454.

United States Court of Appeals,
Second Circuit.

Argued: Jan. 30, 2004.

Final Submission: March 2, 2004.

Decided: Jan. 10, 2005.

Timothy W. Hoover, Federal Public Defender's Office, Western District of New York, for Defendant–Appellee.

Thomas M. Gannon, Attorney, Department of Justice Criminal Div., Appeals Section, Washington, D.C. (Michael A. Battle, United States Attorney Western District of New York and Gretchen L. Wylegala, Assistant United States Attorney Western District of New York, on the brief), for Appellant.

Before: KEARSE and POOLER, Circuit Judges, and UNDERHILL,* District Judge.

UNDERHILL, District Judge.

The District Court for the Western District of New York (William M. Skretny, *Judge*) dismissed the government's petition to summon Lawrence Peterson to a probation violation hearing. The government appeals, contending that, because Peterson was convicted of bank larceny, the DNA Analysis Backlog Elimination Act of 2000, 42 U.S.C. § 14135a (the "DNA Act"), required him to submit to the collection of a DNA sample, and his refusal violated the terms of his probation. This appeal raises two questions: (1) is the government authorized to appeal a district court's ruling dismissing a petition for a probation violation hearing, and (2) was bank larceny a "qualifying Federal offense" under the DNA Act as it existed in 2002.[1] We hold that (1) the government's appeal is authorized by 28 U.S.C. § 1291, but (2) Judge Skretny correctly concluded that bank larceny was not a "qualifying Federal offense." Accordingly, we affirm.

*Background*

On August 9, 1999, Peterson pleaded guilty to one count of bank larceny in violation of 18 U.S.C. § 2113(b). Neither Peterson's original sentence on February 25, 2000, nor his first amended sentence on May 18, 2000, nor his second amended sentence on September 28, 2001 required him to submit to DNA testing as a condition of his probation.[2] The DNA Act was enacted on December 19, 2000, after Peterson's first amended sentence but before his second amended sentence. The DNA Act requires persons convicted of a "qualifying Federal offense" to submit to the collection of DNA samples while on supervised release, parole, or probation. 42 U.S.C. § 14135a. At the time of Peterson's second amended sentence, qualifying offenses included:

[a]n offense involving robbery or burglary (as described in chapter 103 of [Title 18], sections 2111 through 2114, 2116, and 2118 through 2119) . . . .

42 U.S.C. § 14135a(d)(1)(E). Though not explicitly mentioned by the DNA Act, the code section that makes bank larceny a crime, 18 U.S.C. § 2113(b), falls within "sections 2111 through 2114."

In February 2002, Peterson received a letter from the United States Probation Office directing him to appear on February 21, 2002 to submit a blood sample for DNA testing pursuant to the

---

* Stefan R. Underhill, United States District Judge for the District of Connecticut, sitting by designation.

1. The DNA Act has since been amended to make "any felony" a qualifying offense. Pub.L. No. 108–405, 118 Stat. 2260, 2270 (Oct. 30, 2004). All subsequent references to the DNA Act in this decision refer to the pre-amendment version.

2. Although Peterson's final sentence included the requirement that he serve six months of weekends in the Niagara County Jail, that period of incarceration was a condition of his probation, not a separate sentence of incarceration. Thus, although Peterson served a portion of his sentence in jail, his supervision was a term of probation, not supervised release.

DNA Act. Through his attorney, Peterson declined. Following Peterson's refusal to comply, United States Probation Officer Brian Burns petitioned the District Court to summon Peterson to a violation hearing. The petition alleged that Peterson had violated the terms of his probation (1) by refusing to provide a blood sample for DNA testing, a criminal offense under the DNA Act, and (2) by failing to follow the instructions of his probation officer. Peterson moved to dismiss the petition, arguing that conviction for bank larceny was not a qualifying offense mandating DNA collection under 42 U.S.C. § 14135a(d). After argument, Judge Skretny dismissed the petition, concluding that bank larceny was not a qualifying offense under the DNA Act and that Peterson had not violated any term of his probation. The government appealed.[3]

Although neither party raised the issue, at oral argument we questioned whether this Court has jurisdiction to hear the government's appeal from a district court's decision to dismiss a probation violation petition. We requested and received further briefing on the jurisdictional issue.

### Discussion

## I. Government's Authorization to Appeal

■ The Court of Appeals enjoys jurisdiction to hear a particular appeal only when that appeal is authorized by statute. *United States Dep't of Justice v. Federal Labor Relations Auth.*, 792 F.2d 25, 27 (2d

Cir.1986). Three statutes potentially authorize the government's appeal in this case: 18 U.S.C. § 3742(b), which permits the government to appeal sentencing decisions in criminal cases; 18 U.S.C. § 3731, which permits the government to appeal specified decisions or orders in criminal cases; and 28 U.S.C. § 1291, which permits appeals "from all final decisions of the district courts of the United States." The government argues that its appeal is authorized both by 18 U.S.C. § 3731 and 28 U.S.C. § 1291.

### A. *Appeal Pursuant to 18 U.S.C. § 3742(b)*

Peterson's second amended sentence, although imposed after the enactment of the DNA Act, did not require Peterson to provide a DNA sample as a condition of his probation.[4] If the government believed federal law required such a condition, it could have appealed from Peterson's sentence under 18 U.S.C. § 3742(b)(1), which authorizes the government to appeal "an otherwise final sentence if the sentence was imposed in violation of law." The government did not appeal Peterson's second amended sentence within thirty days after entry of judgment, *see* Fed. R.App. P. 4(b)(1)(B)(i), and therefore section 3742(b)(1) is no longer relevant.

### B. *Appeal Pursuant to 18 U.S.C. § 3731*

■ Congress carved out express exceptions to the prohibition on criminal ap-

---

3. On appeal the government has not pursued the argument that Peterson's failure to follow his probation officer's instructions constitutes a violation of probation. Accordingly, we regard that ground as abandoned. *See Otero v. Bridgeport Housing Auth.*, 297 F.3d 142, 144 (2d Cir.2002).

4. Peterson's second amended sentence was imposed prior to the effective date of the 2002 edition of the Sentencing Guidelines, which

was the first edition to list DNA collection as a mandatory condition of probation. *See* U.S.S.G. § 5B1.3(a)(10) ("the defendant shall submit to the collection of a DNA sample from the defendant at the direction of the United States Probation Office if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000 (42 U.S.C. § 14135a)").

peals brought by the government by passing the Omnibus Crime Control Act of 1970, codified at 18 U.S.C. § 3731 ("section 3731").[5] With the passage of section 3731, "Congress intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit." *United States v. Wilson,* 420 U.S. 332, 337, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). That is not to say that Congress intended to allow an appeal in every situation. Rather, as this Court has pointed out, "when the Court says 'all statutory barriers' are removed, it is speaking within a pertinent context and is properly understood to mean all statutory barriers to appeals from the dismissal of an indictment." *United States v. Hundley,* 858 F.2d 58, 63 (2d Cir.1988). "*Wilson* does not purport to say that the Government may appeal from orders ... that do not involve the dismissal of a prosecution and that are not included in other section 3731 categories." *Id.*

*Hundley* held that section 3731 "plainly limits appeals by the United States to specified categories of district court orders—those (1) dismissing an indictment or granting a new trial, (2) suppressing evidence or requiring the return of seized property, and (3) relating to the temporary release of a person charged or convicted of an offense." *Id.* at 62. If this appeal falls in any of those categories, it is the third.

■ As used in section 3731, the term "release" refers to a temporary period when a criminal defendant is permitted to remain free from detention while awaiting trial, sentencing, or appeal. *See* 18 U.S.C. § 3141; *Hundley,* 858 F.2d at 62; S.Rep. No. 98-225, at 3, 29–30 (1983) (discussing section 3731 in section entitled "Bail Reform"), *reprinted in* 1984 U.S.C.C.A.N. 3185, 3212–13. By dismissing the petition for a violation hearing Judge Skretny did not enter an order granting Peterson "release" from custody, nor did he deny a motion to revoke or modify the conditions of a previously entered order granting "release." Probation is a criminal sentence, not a period of release prior to trial, sentencing, or appeal. Accordingly, section 3731 does not authorize the government to appeal from the dismissal of a probation violation petition.

C. *Appeal Pursuant to 28 U.S.C. § 1291*

■ Under 28 U.S.C. § 1291 ("section 1291"), the courts of appeals (with the

---

5. 18 U.S.C. § 3731 provides:

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, or any part thereof, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the

United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

An appeal by the United States shall lie to a court of appeals from a decision or order, entered by a district court of the United States, granting the release of a person charged with or convicted of an offense, or denying a motion for revocation of, or modification of the conditions of, a decision or order granting release.

The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.

The provisions of this section shall be liberally construed to effectuate its purposes.

exception of the United States Court of Appeals for the Federal Circuit) have jurisdiction of appeals from all final decisions of the district courts of the United States. As a general rule, however, "section 1291 does not authorize Government appeals in criminal cases." *Hundley*, 858 F.2d at 64. Nevertheless, a number of courts have ruled that section 1291 provides appellate jurisdiction in criminal cases when the issue on appeal is sufficiently distinct from the underlying criminal proceeding. *See* 15B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure*, § 3919.2 at 604–06 (2d ed.1991).

In order to decide whether section 1291 authorizes this appeal, we must first determine whether the appeal arises in a criminal case or a civil case. If it arises in the former, we must then decide whether the appeal is sufficiently independent from Peterson's underlying criminal case to make it one of the few criminal appeals permitted under section 1291.

1. *Does This Appeal Arise in a Criminal Case?*

■ For a number of reasons, we conclude that this appeal arises in a criminal case. First, several circumstantial facts support this conclusion. The proceeding giving rise to this appeal was initiated by the issuance of a "Summons in a Criminal Case." The counsel appointed to represent Peterson in the underlying criminal prosecution continued to represent Peterson in the violation proceedings and on appeal. In addition, Peterson's case bore a criminal case number in the District Court: *United States v. Peterson*, No. 99–CR–82–S.

More significantly, the consequences Peterson faced at the violation proceeding suggest that this appeal arises in a criminal case. Through the petition, the government sought a determination that Peterson had violated the terms of his probation. Under 18 U.S.C. § 3565, a person found to have violated probation is subject to all the penalties available to the court at the time of his initial sentencing. 18 U.S.C. § 3565(a)(2). Thus, had he violated probation, Peterson could have been sentenced to twelve months' imprisonment, among other penalties. By petitioning for a hearing that would expose Peterson to a term of imprisonment, the government initiated a proceeding that was criminal in nature.[6]

Moreover, in its request for relief, the government sought to supplement Peter-

---

**6.** We acknowledge that other circuits have reached a different conclusion. For example, in *United States v. Marmolejo*, 915 F.2d 981, 982–83 (5th Cir.1990), the Fifth Circuit concluded that, because the full panoply of criminal trial rights do not attach during parole and probation revocation proceedings, such proceedings are not criminal cases. *Id.* at 982 (citing *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)). We do not agree that Supreme Court precedent dictates the result reached by the Fifth Circuit. Because parole and probation revocation proceedings are not part of a criminal prosecution and come after conviction and sentenc-

ing have already stripped the defendant of significant liberties, the Supreme Court has held that the Constitution affords defendants less protection during those revocation proceedings than during trial. *See Morrissey*, 408 U.S. at 480, 92 S.Ct. 2593; *Scarpelli*, 411 U.S. at 782, 93 S.Ct. 1756. Nevertheless, the Court was careful to point out that in probation and parole revocation proceedings "the loss of liberty entailed is a serious deprivation." *Scarpelli*, 411 U.S. at 782, 93 S.Ct. 1756. Accordingly, the mere fact that these proceedings are not part of the course of prosecution, does not, in our view, settle the question whether the proceedings are, for the purposes of section 1291, criminal in nature.

son's conditions of probation to include a directive that he submit to DNA testing. Modification of probation is governed by 18 U.S.C. § 3563(c), which provides that:

The court may modify, reduce, or enlarge the conditions of a sentence of probation at any time prior to the expiration or termination of the term of probation, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the conditions of probation.

Thus, the district court is authorized to modify the conditions of probation, but when doing so must follow the same provisions of the Federal Rules of Criminal Procedure applicable to the imposition of a sentence of probation.

Finally, the government argued that Peterson's failure to submit to the collection of a DNA sample is an independent crime. During argument to the District Court, government counsel noted that:

Title 42 Section 14135a requires that the probation officer responsible for the supervision under federal law of an individual, et cetera, shall collect a DNA sample from any person who is required to give it. That's a separate statutory basis for the probation office to have asked for a DNA sample from the defendant, separate and apart from whether or not there was a condition of his supervision. It's that request that is based on this statute that was being refused on advice of counsel and why we're here before the Court. The fact that it was not a special condition of his probation or his supervision is really a red herring in this case.

July 31, 2002 Tr. at 8. Under 42 U.S.C. § 14135a(a)(5)(A), the failure to cooperate in the collection of a DNA sample by one from whom collection is mandated is a class A misdemeanor. The government argued at the probation proceeding that the District Court should find that Peterson violated that criminal statute.

On the basis of these facts, we conclude that the appeal in this case arises in a criminal case.

### 2. Does the Appeal Meet the Collateral Order Exception?

In general, section 1291 "does not authorize Government appeals in criminal cases." *Hundley*, 858 F.2d at 64. Appeals under section 1291 are permissible, however, "from a small number of criminal orders analogous to civil orders that are appealable under the 'collateral order' doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)." *Hundley*, 858 F.2d at 64. In *Carroll v. United States*, the Supreme Court observed that:

[C]ertain orders relating to a criminal case may be found to possess sufficient independence from the main course of the prosecution to warrant treatment as plenary orders, and thus be appealable on the authority of 28 U.S.C. § 1291 without regard to the limitations of 18 U.S.C. § 3731.

354 U.S. 394, 403, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1956); *see also Abney v. United States*, 431 U.S. 651, 658–59, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). The Court cautioned that "appeals by the Government in criminal cases are something unusual, exceptional, not favored." *Carroll*, 354 U.S. at 400, 77 S.Ct. 1332.

Despite *Carroll*'s caution, we believe this case is one of those unusual situations where the order appealed from is sufficiently distinct from the underlying criminal prosecution to bring it within the collateral order doctrine of *Cohen*. The District Court's determination that Peterson did not violate the terms of his proba-

tion had nothing to do with the merits of Peterson's criminal conviction. All the District Court decided was the purely legal question whether Peterson's conviction for bank larceny required him to submit to the collection of a DNA sample. If the answer was "yes," then Peterson would have violated the standard condition of probation that he not violate any law. If the answer was "no," then Peterson was in compliance with the terms of his probation. Nothing the District Court could have done in response to the government's petition would in any way have affected, or even called into question, the validity of Peterson's underlying conviction or the validity of the sentence imposed by the District Court.

When a district court order has no effect on the merits of the underlying criminal prosecution or sentence, it is "truly collateral to the criminal prosecution." *Abney*, 431 U.S. at 660, 97 S.Ct. 2034. Accordingly, we have no difficulty concluding that a district court's determination that a defendant has or has not violated a condition of probation ordinarily is a decision collateral to the main course of criminal prosecution and therefore appealable under section 1291.

## II. Bank Larceny and the DNA Act

■ Having concluded that we may review the District Court's decision, we turn to its merits. We must decide whether bank larceny was a qualifying offense under the DNA Act prior to the 2004 amendment.[7] We agree with Judge Skretny that it was not.

Bank larceny is prohibited by 18 U.S.C. § 2113(b). At the relevant time, the DNA Act required collection of a DNA sample from anyone on parole, probation, or supervised release who had been convicted of a "qualifying Federal offense." 42 U.S.C.

§ 14135a(a). A qualifying offense included "[a]n offense involving robbery or burglary (as described in chapter 103 of such title, sections 2111 through 2114, 2116, and 2118 through 2119)." 42 U.S.C. § 14135a(d)(1)(E). The government asks us to read this sentence to cover bank larceny.

The government's argument has two steps. First, the government argues that the statute could reasonably be read to define "robbery or burglary" as meaning all of the offenses described in sections 2111 through 2114, 2116, and 2118 through 2119 of Title 18 of the United States Code. Second, the government argues that the possibility of such a reading renders the statute ambiguous, requiring us to look to the Attorney General's regulations and legislative history for guidance. Those guides, the government believes, make it obvious that bank larceny was a qualifying offense.

■ We disagree with both points made by the government. We think the disputed sentence in the DNA Act admits of only one plausible reading, a reading that does not cover bank larceny. Accordingly, there is no need to go beyond the statute's text. *See United States v. Gayle*, 342 F.3d 89, 92 (2d Cir.2003) ("Statutory construction begins with the plain text and, if that text is unambiguous, it usually ends there as well."). Moreover, even if the statute were ambiguous, we would look to traditional canons of statutory construction to resolve the ambiguity, before looking to legislative history and interpretive regulations. *See United States v. Dauray*, 215 F.3d 257, 262 (2d Cir.2000) (when two readings are reasonable, courts resort to the canons of statutory construction to help resolve ambiguity). The relevant

---

7. Because the question before us is whether Peterson violated the conditions of his parole by failing to submit to the collection of a DNA

sample *in 2002,* we do not reach the question whether the 2004 amendment to the DNA Act

canons support Peterson's reading, not the government's.

The government concedes that a plausible reading of the statute is that qualifying offenses are those offenses listed in 18 U.S.C. sections 2111 through 2114, *if* those offenses involve robbery or burglary. Additionally, the government acknowledges that larceny is a completely different offense than either burglary or robbery.[8] The government merely argues that an equally plausible reading of the statute is that the statute *defined* burglary or robbery as meaning all the offenses listed in 18 U.S.C. sections 2111 through 2114. We do not think such a reading is plausible.

The government's reading would attribute to Congress the intent to define the crimes of robbery and burglary in the DNA Act context to mean something contrary to their established definitions for all other purposes. It would mean that Congress used the words "robbery or burglary" to mean "robbery, burglary, or larceny," even though the crime of larceny is different from either burglary or robbery. Absent a clear indication to the contrary, we think it plain that Congress intended such well defined terms as burglary and robbery to have their ordinary meanings. Accordingly, we think the statute means, quite simply, that only those offenses in sections 2111 through 2114 that involve robbery or burglary—which bank larceny unquestionably does not—are qualifying offenses.

Even assuming the government's reading were reasonable, the relevant canons of statutory construction persuade us that such a reading is untenable. There are several reasons for this.

First, the government's reading renders the words "involving robbery or burglary" superfluous. The statute would mean the same thing if it simply said "an offense described in chapter 103 of such title, sections 2111 through 2114, 2116, and 2118 through 2119." Consequently, the government's reading violates the well-known canon of statutory construction that a statute should not be construed to render a word or clause inoperative. *Bell v. Reno,* 218 F.3d 86, 91 (2d Cir.2000).

The government argues that its reading does not render the words superfluous because "[t]he 'robbery or burglary' language is a general descriptive term, derived from the heading to Chapter 103 of Title 18, and it serves to direct a reader's attention to the relevant statutory sections within that chapter." Government's Reply Br. at 3. That argument is beside the point. The words "robbery and burglary"—though not the words "robbery *or* burglary"—do appear in the statutory chapter heading, but that does not explain how they are operative under the government's construction. The government gives no reason why Congress needed to designate the relevant statutes both by precise citations and by an oblique reference to the heading of the statute. Thus, under the government's construction, though the use of citations makes sense, the use of the words "robbery or burglary" is superfluous.[9]

---

now requires him to submit to the collection of a DNA sample.

8. *Compare* 3 LaFave & Scott, *Substantive Criminal Law* § 19.1 et seq. (common-law larceny consists of a trespassory taking and carrying away of the personal property of another with the intent to steal it) *with id.* § 20.3 (robbery includes two additional elements: "that the property be taken from the

person or presence of the other" and "that the taking be accomplished by means of force or putting in fear") *and id.* § 21.1 (burglary consists of "breaking and entering of the dwelling house of another in the nighttime with the intent to commit a felony").

9. We note that the Seventh Circuit has concluded that the possibility that the words "robbery or burglary" are merely a general

■ Second, it is clear from the other qualifying offenses listed in the DNA Act, that when Congress wished to use a crime's name to *describe* a category, rather than to *delineate* one, it knew how to do so, namely, by using the more general term "relating to." *See* 42 U.S.C. § 14135a(d)(1)(A)-(C) ("offense relating to homicide," "offense relating to sexual abuse," "offense relating to peonage and slavery"). Thus the government's construction ignores Congress's explicit choice of the word "involving" over the more general term "relating to." When Congress uses particular language in one section of a statute and different language in another, we presume its word choice was intentional. *See United States v. Pettus*, 303 F.3d 480, 485 (2d Cir.2002).

Third, we note that our reading is consistent with a reading of the DNA Act as a whole. *See Dauray*, 215 F.3d at 262 ("A statute is to be considered in all its parts when construing any one of them."). The DNA Act, in general, required DNA collection from those convicted of felonies involving either violence or sexual abuse. Not only is bank larceny neither a violent offence nor a sexual offense, but, depending on the amount stolen, it may not even be a felony. Accordingly, not only is our reading dictated by the plain, unambiguous language of the subsection in question, but it also fits neatly with a reading of the statute as a whole.

We are not persuaded by the government's counter-argument that the principle of "the specific governs the general" supports its construction. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). In this case one term is not narrower than the other, rather the terms have distinct but overlapping scope. "Robbery or burglary" defines one set of offenses, which includes some offenses that are contained in sections 2111 through 2114, 2116, and 2118 through 2119, and some that are not. "[S]ections 2111 through 2114, 2116, and 2118 through 2119" defines a different set of offenses, which includes some offenses that involve robbery or burglary, and some that do not. One term is not broad and the other narrow; they are simply different.

Because these canons of statutory construction confirm that Peterson's reading of the statute is the appropriate one, we need not look to the statute's legislative history for guidance. *Dauray*, 215 F.3d at 264 ("When the plain language and canons of statutory interpretation fail to resolve statutory ambiguity, we will resort to legislative history."). Moreover, nothing in the legislative history of the DNA Act indicates that this is one of those rare situations in which external evidence of Congressional intent overrides the plain language of a statute.[10] *See In re Stoltz*, 315 F.3d 80, 89 (2d Cir.2002). Similarly, our conclusion that the statute is unambiguous obviates any need to consider the Attorney General's interpretation of the statute or the public policy arguments made by the government. *See In re Ven-*

reference to the "Robbery and Burglary" title of chapter 103 makes the DNA Act ambiguous, requiring that deference be given to the Attorney General's regulations. *See United States v. Henderson*, 376 F.3d 730 (7th Cir. 2004). For the reasons set forth in this opinion, we respectfully disagree.

**10.** On the contrary, the legislative history appears to support the conclusion that Con-

gress, prior to the 2004 amendment, only intended to make crimes qualifying offenses if they involve violence or sexual abuse. *See* H.R.Rep. No. 106–900(I), at 11 (2000), *reprinted in* 2000 U.S.C.C.A.N. 2323, 2327 ("The offenses triggering the sample requirement are specific in the bill and consist principally of serious violent crimes and crimes involving sex offenses.").

*ture Mortgage Fund L.P.*, 282 F.3d 185, 188 (2d Cir.2002) ("legislative history and other tools of interpretation may be relied upon only if the terms of the statute are ambiguous").

### Conclusion

Because the DNA Act did not require a defendant convicted of bank larceny to submit to the collection of a DNA sample, Peterson did not violate the Act or the conditions of his probation. Accordingly we affirm the District Court's dismissal of the petition for a violation hearing.